IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| OI EUROPEAN GROUP B.V., <br><br> Plaintiff, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA; *et al.*, <br><br> Defendants. | C.A. No. 19-00290-LPS |

## PLAINTIFF'S OPPOSITION TO MOTION TO STAY

Plaintiff OI European Group B.V. ("OIEG"), submits this opposition to the Motion to Stay on Behalf of Defendants PDV Holding, Inc. ("PDVH"), CITGO Holding, Inc. ("CITGO Holding") and CITGO Petroleum Corporation (collectively, the "Domestic Corporations"[1]) (Dkt. No. 19).

## INTRODUCTION

This action is very different from pending actions against the Bolivarian Republic of Venezuela ("Venezuela") and Petróleos de Venezuela, S.A. ("PDVSA") in which this Court has previously entered stays. The Domestic Corporations are not parties to those actions, and the stays of those proceedings pending the *Crystallex* appeal (discussed below) were entered because that appeal will decide legal, and potentially factual issues identical to the issues that govern those cases. The bulk of this action seeks to hold the Domestic Corporations liable for Venezuela's obligations, and the bulk of the allegations of the Complaint focus on their status as

---

[1] Each of the Domestic Corporations is a Delaware corporation. *See* Compl. ¶¶ 19–21.

DB1/ 102731260.11

alter egos transferring assets out of the reach of Venezuela's creditors. A stay of the entire action pending the *Crystallex* appeal is not warranted in this case because it would prejudice OIEG's right to pursue its claims against the Domestic Corporations, whose liability will not be impacted by the result of the appeal. Judicial economy would be impaired, not served, by such a stay, which would prejudice OIEG by permitting key evidence to become stale, and placing at risk OIEG's relative priority vis-à-vis other creditors, and its ability to enforce an eventual award.

OIEG concedes that should PDVSA appear in this case prior to disposition of the *Crystallex* proceedings discussed below, a limited stay as to claims against PDVSA might well be warranted.[2] But no stay is warranted as to the movant Domestic Corporations. The Court should deny the Domestic Corporations' Motion.

## BACKGROUND

OIEG filed suit on February 11, 2019 against the Domestic Corporations, their Venezuelan parent PDVSA, and Venezuela, which owns and controls PDVSA. *See generally* Dkt. No. 1 ("Compl."). Holding an arbitration award issued against Venezuela by the International Centre of Settlement of Investment Disputes ("ICSID"), OIEG seeks declarations that the Domestic Corporations and PDVSA are alter egos of Venezuela. Compl. Counts I–IV. It also seeks to unwind transactions through which Venezuela used these alter egos to funnel assets out of the United States and beyond the reach of its creditors, including judgment creditors like OIEG. *Id.*, Counts V–VI. Regardless of what may ensue as to Venezuela and PDVSA, substantial relief is sought, and will require factual review by this Court, with regard to the Domestic Corporations.

---

[2] Circumstances may change; however, on the current record, if PDVSA appeared today, OIEG concedes that a *partial* stay of proceedings against PDVSA would be warranted.

Venezuela is liable on a number of ICSID arbitration awards. It has publically refused to pay, and schemed to thwart enforcement. *Id.* ¶¶ 42–50. Venezuela has monetized its assets in the United States, which it holds through the Domestic Corporations, and transferred them offshore, *id.* ¶¶ 48–50, by exercising extensive control over the Domestic Corporations, *id.* ¶¶ 4–5, 75. PDVH is a direct, wholly owned subsidiary of PDVSA. *Id.* ¶ 11. PDVH owns CITGO Holding, which in turn owns CITGO Petroleum. *Id.* ¶¶ 12–13. Venezuela exercises its dominance in part through PDVSA, which by grant of the Venezuelan government has extensive control of PDVH and CITGO Holding. *Id.* ¶¶ 76–79. The directors of CITGO Holding have close ties to the Venezuelan government. *Id.* ¶¶ 80–81, 84. CITGO Petroleum functions as an alter ego of Venezuela as a result of the extensive control that Venezuela exercises over its affairs. *Id.* ¶¶ 87. To dodge its obligations under the arbitration awards and judgments against it, Venezuela executed a scheme to drain assets from each of the Domestic Corporations and to relocate them to Venezuela, beyond the reach of United States creditors and courts. *Id.* ¶¶ 99, 119–20.

Count I, the only claim specific to PDVSA, seeks to have PDVSA declared an alter ego of Venezuela and directly liable for Venezuela's obligations to OIEG. *Id.* ¶¶ 137–47. OIEG concedes that a stay of proceedings against PDVSA *may* be warranted, should PDVSA ever appear and seek such a stay. To date it has not. Counts II–IV seek relief against *U.S. persons*—the Domestic Corporations—none of which is protected by the Foreign Sovereign Immunities Act ("FSIA"). *Id.* ¶¶ 148–56. While each of the Domestic Corporations is, as a matter of Delaware common law, an alter ego that should in equity be held liable for the Award, none is an "agency or instrumentality" of the government in the sense that PDVSA is. *See* 28 U.S.C. § 1603(b)(3) (defining "agency or instrumentality of a foreign state," for FSIA purposes, to

exclude U.S. corporations). In Counts V–VI, OIEG claims that certain transactions made by the Domestic Corporations were fraudulent transfers that should be avoided and unwound. *Id.* ¶¶ 157–67. Count VII seeks to hold CITGO Holding, PDVH, and their directors liable for declaring an improper dividend under Delaware law as part of Venezuela's scheme. *Id.* ¶¶ 168–75.

Only the Domestic Corporations have appeared and sought relief. They ask to stay all proceedings pending the conclusion of the appeal in *Crystallex International Corporation v. Bolivarian Republic of Venezuela*, No. 16-04012 (3d Cir., filed Oct. 28, 2016), *on appeal from judgment in* No. 15-1082 (D. Del., filed Sept. 30, 2016) (the "Crystallex Asset Proceeding"). That appeal challenges, on FSIA and related grounds, this Court's determination that PDVSA, concededly an instrumentality of Venezuela, is its "alter ego" for purposes of a separate arbitration award. It raises no question as to the alter ego status of any Domestic Corporation.

## ARGUMENT

### I.  LEGAL STANDARD

"Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936); *see Dellinger v. Mitchell*, 442 F.2d 782, 787 (D.C. Cir. 1971) (finding improper a complete stay pending appeal of parallel action with some overlapping parties in another circuit and rejecting rule that would support a "stay of proceedings in a case whenever the same question is involved before another court in litigation not involving the parties protesting the stay").

Movants have not overcome three core problems. The first and pervasive problem is the heavy burden they carry. "The right to proceed in court should not be denied except under the most extreme circumstances." *GFL Advantage Fund, Ltd. v. Colkitt*, 216 F.R.D. 189, 193 (D.D.C. 2003) (internal quotation omitted). As the Supreme Court has recognized, "[t]he

proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997). "[T]he suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if . . . the stay for which he prays will work damage to someone else." *Landis*, 299 U.S. at 255. We show below that this burden is met.

A second problem is that stays should not be granted where indefinite delay is likely. "A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Levya v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979). "[A] court abuses its discretion in ordering a stay 'of indefinite duration in the absence of a pressing need.'" *Belize Soc. Dec. Ltd. v. Gov't of Belize*, 668 F.3d 724, 731–32 (D.C. Cir. 2012) (quoting *Landis*, 299 U.S. at 255). A stay should be denied where it would unduly delay adjudication of disputed issues. *See, e.g., Cooper Notification, Inc. v. Twitter, Inc.*, 2010 WL 5149351, at *3–*4 (D. Del. Dec. 13, 2010). We show below that recent events in the Crystallex Asset Proceedings suggest that substantial delays are imminent.

A third general proposition is that even where a stay is warranted, it may be appropriate only for some *phase* of a litigation. *See Clinton*, 520 U.S. at 708 (recognizing that *trial* of an action may be stayed even though discovery proceeds). As we show below, the factual questions raised by the claims against the Domestic Corporations will not be settled by the Crystallex Asset Proceedings, and accordingly, discovery should commence.

II. **THE CRYSTALLEX ASSET PROCEEDING WILL NOT DICTATE THE RESULT OF THIS CASE AS TO THE DOMESTIC CORPORATIONS.**

While the Domestic Corporations seek a blanket stay pending resolution of the Crystallex Asset Proceeding, Mot. at 1–2, that proceeding will not resolve the great majority of counts in this action. That proceeding "is unlikely to decide, or to contribute to the decision of, the factual

and legal issues before" the Court as they relate to the Domestic Corporations in a manner that would justify a stay of all proceedings in this case. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1113 (9th Cir. 2005).

The appeal presents five questions. All relate to whether PDVSA, concededly an instrumentality of Venezuela, is entitled to immunities under the FSIA and *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("<u>Bancec</u>").[3] The Court of Appeals' review of those questions will not establish or settle any facts or legal rule with regard to the alter ego liability of an indirect Delaware corporate subsidiary—that is, a U.S. person not protected by the FSIA under 28 U.S.C. § 1603(b)(3). *See* Brief for Intervenor-Appellant at 5–6 ("<u>PDVSA App. Br.</u>"), Crystallex Asset Proceeding (Dec. 10, 2018).

The Domestic Corporations argue that all claims against them would be resolved if the Third Circuit decides that PDVSA is not an alter ego of Venezuela. Mot. at 4 ("[I]f PDVSA is not the alter ego of the Republic, then clearly the Domestic Corporations cannot be the alter egos

---

[3] The questions presented may be summarized as follows:

1. Whether this Court needed an independent basis for subject matter jurisdiction with respect to PDVSA;

2. Whether the presumption of separateness from the Republic to which PDVSA is entitled under *Bancec* was overcome;

3. Whether Crystallex satisfied the requirement of *Bancec* that the Republic exercise day-to-day control over PDVSA;

4. Whether the PDVH shares are immune from attachment and execution under the FSIA; and

5. Whether this Court was divested of jurisdiction to authorize attachment and execution on the PDVH shares during the pendency of PDVSA's appeal.

*See* PDVSA App. Br. at 5–6 (record citations omitted).

of the Republic.") (footnote omitted). Two false premises underlie this argument. The first is that the Crystallex Asset Proceeding will settle whether PDVSA is an alter ego of Venezuela as a matter of common law. This is not at all clear. If it prevails, PDVSA may prevail simply on the argument that it is entitled to an immunity by reason of federal statute or doctrines of jurisdiction and international comity.[4]

The second false premise is that C cannot be an alter ego of A unless B is also an alter ego of A. This is not the law. Whether C is an alter ego of A depends on the degree of control that A has over C, demonstrated through a number of factors that show that the two operated as one. *See, e.g., Blair v. Infineon Techs. AG*, 720 F. Supp. 2d 462, 470 (D. Del. 2010) ("An alter ego relationship may arise where 'a corporate parent exercises *complete domination* and control over its subsidiary.'") (emphasis added) (citation omitted). Regardless of whether Venezuela used another entity to do so, the Complaint alleges that "*Venezuela* . . . dominates and controls" each of the Domestic Corporations. Compl. ¶¶ 87 (CITGO Petroleum); *see id.* ¶¶ 81 (alleging that through a state decree "[Venezuela] consolidated *its* extensive day-to-day control over its state-owned oil companies, including PDVH") (emphasis added), 84 ("Venezuela and CITGO Holding act as a single economic unit in which CITGO Holding is dominated and extensively controlled by Venezuela."). Each Domestic Corporation is an alter ego, regardless of whether PDVSA is also an alter ego.

Among the defendants in this action, only PDVSA is "a duly created instrumentality" of Venezuela entitled to "a presumption of independent status" under the FSIA. *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 396 (D. Del. 2018) (quoting

---

[4] Indeed, it seems quite *un*likely that the Court of Appeals, reviewing this Court's factual findings for "clear error," would interpose findings of its own. *Karpenko v. Leendertz*, 619 F.3d 259, 262–63 (3d Cir. 2010).

*Bancec*, 462 U.S. at 627). To some degree at least, a state instrumentality may carry out the business of the state and be managed by government-appointed directors without losing its separate status. *Id.* at 398 (citing *Bancec*, 462 U.S. at 624). Rebutting the presumption under federal law requires demonstrating extensive control rising to the level of a principal/agent relationship through a different set of factors from those applied to ordinary alter ego analysis of domestic corporations under domestic law. *Id.* at 396–97, 401 (citing *EM Ltd. v. Banco Cent. de la Republica Argentina*, 800 F.3d 78, 91 (2d Cir. 2015) (listing factors)); *contrast Blair*, 720 F. Supp. 2d at 470 (listing factors applied to ordinary corporations). Thus, *even if* the Third Circuit should rule that the *Crystallex* plaintiff did not meet its burden as to PDVSA, it does not follow that Venezuela did not control the Domestic Corporations in a manner sufficient to convert *them* into alter egos as a matter of Delaware law.

For these reasons, disputed issues of fact and law as to each Domestic Corporation will survive any disposition of the Crystallex Asset Proceeding. This case is therefore different from those to which the Motion refers, in which the central issue was the lack of separateness of PDVSA, not that of any other entity. *See Crystallex*, 333 F. Supp. 3d at 401–414; *ConocoPhillips Petrozuata B.V. et al v. Petroleos de Venezuela S.A. et al.*, No. 1:16-cv-00904-LPS, Dkt. No. 1 ¶¶ 63–72 (Compl.) (D. Del., filed Oct. 6, 2016). Plaintiffs in those cases also agreed to or *requested* a stay. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 1:17-mc-00151-LPS, Dkt. No. 130 (Letter from Plaintiff's Counsel, Nov. 26, 2018) (D. Del.); *ConocoPhillips*, Dkt. No. 56 (Joint Status Report, Dec. 22, 2017). This Court was not asked, as it is here, to impose a stay over the objection of the plaintiff.

## III. THE *ST. CLAIR* FACTORS WEIGH AGAINST GRANTING ANY STAY.

In determining whether to grant a stay, courts weigh: "(1) the length of the requested stay; (2) the 'hardship or inequity' that the movant would face in going forward with the litigation; (3) the injury that a stay would inflict upon the non-movant; and (4) whether a stay will simplify issues and promote judicial economy." *St. Clair Intellectual Prop. Consultants, Inc. v. Fujifilm Holdings Corp.*, No. 08-373-JJF-LPS, 2009 WL 192457, at *2 (D. Del. Jan. 27, 2009) (*citing Landis*, 299 U.S. at 254–55). Should PDVSA appear at some point in future, the "rare circumstances" necessary for a stay may well be present *as to PDVSA* (depending on the status of the Crystallex Asset Proceedings at that point) because those proceedings concern both governing law as to PDVSA, and essentially the same facts.[5] But the appeal does not address either the facts or law that will govern review of the claims of the Domestic Corporations.

### A. The Requested Stay Is Indefinite.

Courts must consider "the length of the requested stay." *St. Clair*, 2009 WL 192457 at 2 (citations omitted). "When [reasonable] limits have been reached, the fetters should fall off." *Landis*, 299 U.S. at 257. The request should be denied if "the record fails to show either what a 'resolution' of [the other] case would entail or when such a resolution is likely to be reached." *Belize*, 668 F.3d at 732 (citation omitted).

With the Crystallex Asset Proceeding briefed and scheduled for oral argument, Venezuela recently moved to stay the appeal. *See* Order (3d Cir. Mar. 20, 2019) (granting Venezuela's motion to intervene and indicating that the stay motion will be considered at oral argument in April). The Third Circuit has not advised that it intends to expedite its review.

---

[5] A summons to PDVSA was issued by the Court on March 22, 2019, and OIEG, through counsel, is diligently pursuing service on PDVSA under the Hague Convention.

Venezuela's intervention, and uncertainty as to how the Court of Appeals will dispose of its motion, creates the potential for indefinite delay, to say nothing of the possibility that the losing party may seek *certiorari* review. *See Landis*, 299 U.S. at 256 (requested stay through conclusion of appeal exceeds "the limits of a fair discretion").

### B. The Domestic Corporations Face No "Hardship or Inequity."

The Domestic Corporations argue "hardship and inequity" in (1) briefing a motion to dismiss in the absence of the Third Circuit's ruling, and (2) "the risk to their financial wellbeing" in proceeding with a case that "could warrant dismissal in light of the Third Circuit's decision." Mot. at 6. These assertions do not warrant a stay. *Landis*, 299 U.S. at 255.

We have shown above that the first factor would apply only to PDVSA, which has not appeared in this action or sought relief.

As to the second factor, responding to a complaint is a requirement that the law imposes on every domestic corporate defendant, and not the sort of "hardship or inequity" that warrants a stay. *See, e.g., Cooper*, 2010 WL 5149351, at *2 n.1 (the "added cost" defendants "will incur in proceeding with the litigation" is not a sufficient basis for granting a stay). The "financial hardship" argument is simply the inverse proposition to that of the complaint, which is that OIEG has suffered financial hardship because Venezuela uses U.S. domestic corporations as alter egos to hinder and delay its creditors.

The essential point here is a practical one. The proof of any alter ego case is "a fact intensive assessment of numerous factors." *Vepco Park, Inc. v. Custom Air Servs., Inc.*, 2016 WL 1613654, at *3 (Del. Super. Ct. Feb. 25, 2016); *cf. Crystallex Int'l Corp.*, 333 F. Supp. 3d at 401 (inquiry regarding whether sovereign state exercise control over corporation involves "fact-intensive inquiry"). The parties here should proceed promptly to discovery. OIEG believes that discovery will vindicate the *alter ego* claims, and the Domestic Corporations evidently hope that

it will undermine them, but in either event the discovery will be necessary for this Court's disposition of Counts II-VII. As the Domestic Corporations have failed to show any pressing need for a stay, OIEG should not be forced to postpone pursuit of its claims.

### C. Delay Would Prejudice OIEG.

The Domestic Corporations have not met their burden to show that a stay would not materially harm OIEG. They argue that a stay would not cost OIEG "its 'place in line'" in terms of priority because "all action by the Republic's creditors *presently before this Court* are already stayed." This ignores the proceedings by creditors of Venezuela and PDVSA in other districts that are not stayed. Mot. at 6 (emphasis added); *see, e.g., Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela et al.*, No. 4:18-cv-01458 (S.D. Tex., filed May 7, 2018) (seeking enforcement of arbitration award and judgment of over $971 million); *Koch Minerals Sarl v. Bolivarian Republic of Venezuela*, No. 1:17-cv-02559-KBJ (D.D.C., amended complaint filed May 23, 2018) (seeking confirmation of ICSID award of nearly $400 million). It also ignores additional actions that may be filed. A serious risk arises that similarly requested relief will issue in the other actions, potentially dwindling sources of recovery for OIEG.

A stay would also threaten OIEG's ability effectively to enforce its claims. *See Cooper*, 2010 WL 5149351, at *4 (denying stay where delay would mean that plaintiff's "right to enforce [its claim] would be severely hindered"). If OIEG prevails on the merits, among other things it would be entitled to an order enjoining further transfers by the Domestic Corporations. *See* 8 *Del. C.* § 1307(a) (providing for "relief against a transfer," including injunction against "further disposition by the debtor or a transferee, or both, of the asset transferred or of other property."). But a stay in this case risks destroying the efficacy of any injunction against future transfers by allowing ever more time for transfers to take place the longer the action remains pending.

Finally, the Domestic Corporations have not shown that a stay would not jeopardize the availability and quality of evidence in this case. Delay "increase[s] the danger of prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts, or the possible death [or unavailability] of a party." *Clinton*, 520 U.S. at 707–08; *New York v. Hill*, 528 U.S. 110, 117 (2000) ("Delay can lead to a less accurate outcome as witnesses become unavailable and memories fade."). The indefinite stay requested by the Domestic Corporations will create evidentiary prejudice for OIEG. OIEG alleges, for example, that the offending transactions were undertaken with the actual, subjective intent on the part of the Domestic Corporations to frustrate and evade satisfaction of OIEG's claims. Proving any person's subjective intent is only made more difficult by the passage of time.

The prejudice to OIEG from a stay outweighs any benefit to the Domestic Corporations or this Court, and the Domestic Corporations' Motion therefore should be denied.

### D. A Stay Would Not Promote Judicial Economy.

In sum, staying this case pending the Crystallex Asset Proceeding would not promote judicial economy. The issues as to the Domestic Corporations differ materially from the issues in the Crystallex Asset Proceeding. Because the Third Circuit's ruling would not "streamline the legal briefing and outcomes in this case" for the Domestic Corporations, the movants have not met their burden.

## CONCLUSION

For the foregoing reasons, OIEG requests that the Court deny the Motion, and grant to it such other and further relief as may be just and proper.

Dated: April 1, 2019

MORGAN, LEWIS & BOCKIUS LLP

*/s/ Jody C. Barillare*
Jody C. Barillare (#5107)
1007 N. Orange Street, Suite 501
Wilmington, DE 19801
Telephone: 302-574-3000
Facsimile: 302-574-3001
jody.barillare@morganlewis.com

John C. Goodchild, III (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: 215-963-5000
Facsimile: 215-963-5001
john.goodchild@morganlewis.com

Sabin Willett (admitted *pro hac vice*)
Christopher L. Carter (admitted *pro hac vice*)
Arcangelo S. Cella (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston MA 02110
Telephone: 617-341-7700
Facsimile: 617-341-7701
sabin.willett@morganlewis.com
christopher.carter@morganlewis.com
arcangelo.cella@morganlewis.com

*Attorneys for Plaintiff, OI European Group B.V.*