# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CRYSTALLEX INTERNATIONAL CORP., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 15-cv-1082-LPS |
| | : | |
| PDV HOLDING INC., | : | |
| | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| CONOCOPHILLIPS PETROZUATA B.V., et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | C.A. No. 16-cv-904-LPS |
| | : | |
| PETROLEOS DE VENEZUELA S.A., et al., | : | |
| | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| CRYSTALLEX INTERNATIONAL CORP., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 16-cv-1007-LPS |
| | : | |
| PDV HOLDING INC., | : | |
| | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| CONOCOPHILLIPS PETROZUATA B.V., et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | C.A. No. 17-cv-28-LPS |
| | : | |
| PETROLEOS DE VENEZUELA S.A., et al., | : | |
| | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 17-mc-151-LPS |
| | : | |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | : | |
| | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| SAINT-GOBAIN PERFORMANCE PLASTICS EUROPE, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 18-cv-1963-LPS |
| | : | |
| BOLIVARIAN REPUBLIC OF VENEZUELA, et al., | : | |
| | : | |
| | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| OI EUROPEAN GROUP B.V., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 19-cv-290-LPS |
| | : | |
| BOLIVARIAN REPUBLIC OF VENEZUELA, et al., | : | |
| | : | |
| | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| OI EUROPEAN GROUP B.V., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 19-mc-290-LPS |
| | : | |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM ORDER

All of the numerous above-captioned actions relate to efforts to collect debts owed or allegedly owed by the Republic of Venezuela ("Venezuela" or "the Republic"). The case that has progressed furthest is *Crystallex International Corp. v. Bolivarian Republic of Venezuela*, 17-mc-151 ("*Crystallex Asset Proceeding*").[1] In the *Crystallex Asset Proceeding*, the Court issued an opinion in August 2018 holding that Crystallex had met its burden to prove that Petróleos de Venezuela S.A. ("PDVSA") is the alter ego of the Republic. *See Crystallex Asset Proceeding*, 333 F. Supp. 3d 380, 412, 414 ("*Crystallex* Aug. 9 Op."). The Court further held that the Republic's and PDVSA's jurisdictional immunities and immunities from attachment under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.*, do not defeat Crystallex's claims. *See id.* at 414-21. Subsequently, in another opinion, the Court granted Crystallex's motion for writ of attachment. *See Crystallex Asset Proceeding*, 2018 WL 4026738 (D. Del. Aug. 23, 2018) ("*Crystallex* Aug. 23 Op."). The United States Marshals Service has served the writ. (*See* D.I. 96)

---

[1] All citations to the docket index ("D.I.") are to the *Crystallex Asset Proceeding*, unless otherwise noted.

1

The Republic and PDVSA filed an interlocutory appeal in the Court of Appeals for the Third Circuit.  (*See* D.I. 80)  On November 23, 2018, while the appeal was being briefed, the Third Circuit stayed proceedings in this Court.  (D.I. 129) ("[I]t is further ORDERED that all proceedings in the District Court are hereby stayed pending the merits panel's disposition of the petition for writ of mandamus and the consolidated appeals . . .")  A week later, this Court issued its own stay order, staying proceedings in the *Crystallex Asset Proceeding* and in other actions[2] "until . . . the Third Circuit's disposition of the petition for writ of mandamus and the consolidated appeals."  (D.I. 132)

On July 29, 2019, the Third Circuit issued an opinion affirming this Court.  *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126 (3d Cir. 2019) ("*Crystallex* App. Op.").[3]  On September 30, 2019, while the Republic and PDVSA's requests for rehearing were pending, the Third Circuit (without explanation) lifted its stay of this Court's proceedings.  (*See* D.I. 136)

On October 11, 2019, this Court received a joint status report in the *Crystallex Asset Proceeding*.  (*See* D.I. 139)  Other status reports were thereafter provided in other actions.  (*See*

---

[2]The other actions that were stayed as a result of this Court's November 30, 2018 order are: *Crystallex International Corp, v. PDV Holding Inc.*, C.A. No. 15-1082 ("*Crystallex I*"); *Crystallex International Corp, v. PDV Holding Inc.*, C.A. No. 16-1007 ("*Crystallex II*"); *ConocoPhillips Petrozuata B.V. v. Petróleos de Venezuela S.A.*, C.A. 16-904 ("*ConocoPhillips I*"); and *ConocoPhillips Petrozuata B.V. v. Petróleos de Venezuela S.A.*, C.A. 17-28 ("*ConocoPhillips II*").

[3]More particularly, as Crystallex has explained: "On July 29, 2019, the Third Circuit issued its order and judgment denying the appeal in *Crystallex International Corporation v. Bolivarian Republic of Venezuela*, No. 18-2797, as well as denying as moot (i) the appeal in *Crystallex International Corporation v. Bolivarian Republic of Venezuela*, No. 18-3124, and (ii) the petition for writ of mandamus filed in *In Re: Petróleos de Venezuela, S.A.*, No. 18-2889." (D.I. 139 at 1)

*Crystallex I* D.I. 115; *Crystallex II* D.I. 69; *ConocoPhillips I* D.I. 67; *ConocoPhillips II* D.I. 63)

On November 13, 2019, the Court convened a consolidated, in-court status conference in all of the above-captioned actions to receive further input on how it should proceed.  (*See Crystallex I* D.I. 118) ("Tr.")  Then, on November 21, 2019, the Third Circuit denied the requests for rehearing.

Having reviewed all of the pertinent filings in all of these cases, and having carefully considered the comments provided at the November 13 status conference,

**IT IS HEREBY ORDERED** that:

1.      The *Crystallex Asset Proceeding* is **STAYED** until the conclusion of proceedings in the Supreme Court (i.e., the latest of (if applicable) the expiration of the time to file a petition for a writ of certiorari ("cert. petition"), denial of such a petition, or conclusion of proceedings following grant of such petition) or further order of this or any other Court lifting the stay.  The Court's decision to stay is **WITHOUT PREJUDICE** to Crystallex's opportunity to file a motion to lift the stay.

Federal Rule of Civil Procedure 62(c), which governs requests for a stay pending appeal, requires a court faced with a situation like the one before the Court to consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991) (applying *Hilton* factors and granting motion to stay).  Applying this standard, the Court has determined that a stay until

3

conclusion of proceedings in the Supreme Court is the best exercise of its discretion.  While the Court cannot say that the Republic or PDVSA (both of which have indicated they will be filing a cert. petition (*see* D.I. 139 at 7) have made a strong showing they are likely to succeed on the merits, the Court does believe there is a greater-than-usual likelihood that their petition will be granted.  (*See generally* Tr. at 25-27) (counsel for Republic discussing reasons Supreme Court may grant petition, including purported Circuit split and sensitive issues of international relations)  More importantly, for reasons further explained below, the Court is persuaded that the Republic and PDVSA could be irreparably injured in the absence of a stay, yet a stay will not substantially injure the other parties (particularly Crystallex and other creditors) interested in the proceeding.[4]  The Court also finds that the public interest (including the public's interest in furthering the expressed foreign policy of the United States, as determined by the Executive Branch) strongly supports a stay.

Additionally, the following considerations (in no particular order) have factored into the Court's conclusion that its proceedings should be halted at this time:

A.     Crystallex's lack of a license from the Office of Foreign Assets Control ("OFAC")

---

[4]Crystallex asserts "there's a very real risk that we will be prejudiced severely if this case stalls and doesn't go anywhere after the Third Circuit has ruled" (Tr. at 20), but Crystallex has failed, at this point, to persuade the Court that this is correct.  Crystallex is trying to collect money it is owed and it has attached property of the Republic (i.e., PDVSA's shares of Petróleos de Venezuela Holding ("PDVH")) in order to collect that debt.  If the Supreme Court proceedings do not alter the Third Circuit's instructions to this Court, the Court intends to proceed toward selling those shares.  Crystallex's request for a bond (*see, e.g.*, Tr. at 20) is denied.  (*See* Tr. at 37) (Republic: "They're fully secured for whatever the value is of those assets.")

4

and its failure to this point even to seek one.[5]

B.      The uncertainty created by further proceedings, which could diminish the value of the Petróleos de Venezuela Holding ("PDVH") shares to be sold, as potential buyers cannot know with any confidence that a purchase and transfer of the shares can be consummated.[6]

C.      The change in the regime of U.S. sanctions imposed on Venezuela and recent amendment of OFAC's policies and guidance.[7]

D.      The change in the Boards of Directors at PDVSA, PDVH, CITGO Holding, Inc., and CITGO Petroleum Corp. ("CITGO"), and possible consequent changes in the relationship of PDVSA to the Republic.[8]

---

[5]*See, e.g., Crystallex* App. Op. at 151 ("[A]ny attachment and execution against PDVSA's shares of PDVH would likely need to be authorized by the Treasury Department."); *id.* ("Whether that FAQ is legally binding, Crystallex has committed that it will seek clarification of the current license . . . and/or the issuance of an additional license to cover the eventual execution sale of the shares of PDVH once the [attachment w]rit has issued.") (internal quotation marks omitted; some alterations in original); *see also* Tr. at 24 (Crystallex acknowledging it has not yet sought OFAC license and does not believe it can until buyer of PDVSA's property is identified after bidding process).

[6]*See, e.g.*, Tr. at 36 (Republic: "If you start a process which is designed to end up in a sale of these shares and there is a complete lack of certainty concerning whether or not that transaction can ever happen, it is going to severely depress the value of those shares."); Tr. at 39 (Republic: "[P]roceeding down with the sale process, all the way through essentially signing a contract to sale, waiting to find out whether they're going to get a license is going to substantially diminish the value that they're able to obtain . . . for the PDVH stock [which] will cause injury to Citgo Petroleum, a U.S. corporation with thousands of people employed.").

[7]*See, e.g.*, Tr. at 35 (Republic arguing: "The whole regime [of sanctions] has changed and the reasons for it have changed from being, in effect, punitive with respect to Venezuela to now being helpful to [it] in trying to preserve assets of Venezuela.").

[8]*See Jiménez v. Palacios*, 2019 WL 3526479 (Del. Ch. Aug. 2, 2019).

E.    The change in the U.S.-recognized government of Venezuela.[9]

F.    Issues of international affairs and United States foreign policy, which are within the purview of the Executive Branch.[10]

G.    The Court's concern not to create a "run on the bank," that is, an influx of creditors to the Court, with negative consequences for the Republic, for U.S. policy (which favors an orderly transition of power in the Republic and a coordinated restructuring of its debts), and, potentially, this Court.[11]

---

[9]*See* Tr. at 57 ("[N]ow we have a much more comprehensive blocking regime where the OFAC guidance is absolutely clear."); D.I. 139 at 8 ("On January 23, 2019, the President of the United States recognized Juan Guaidó as the interim president of Venezuela.").  The Third Circuit has recognized the Guaidó regime "as authorized to speak and act on behalf of Venezuela" in these cases.  *Crystallex* App. Op. at 135 n.2.

[10]The Republic, which did not appear in this Court's earlier proceedings but did intervene in the Third Circuit and has now entered an appearance here, as of October 10, 2019 (*see* D.I. 139 at 7), posits that "lifting the stay would undermine a foreign ally, worsen a grave humanitarian crisis, and tread on diplomatic sensitivities."  (D.I. 139 at 7; *see also* Tr. at 63-64 ("[T]he foreign policy of the United States is that we want to encourage voluntary consensual restructuring in the cases of [our] foreign allies where they run into economic crisis.  So the more we do to impede that, the worse it is for our nation's foreign policy."))

[11]*See* D.I. 139 at 11 ("Encouraged by the pendency of this case, a growing number of claimants are bringing piecemeal litigation against the Republic and PDVSA, attempting to seize their limited external assets or, at a minimum, outpace other similarly situated claimants."); *see also* Tr. at 31 ("So what is happening right now is on the one side, you have got a terrible crisis and a struggling government trying desperately to dislodge a despot and on the other side, you have a group of people, many of whom support the goals of the Guaidó government, support the intention to restore the economy, restore democracy, engage in a consensual restructuring, but they see what is happening in this courtroom and they feel that they cannot stand on the sidelines."); Tr. at 32 ("If the Court moves forward, it's creating, in essence, creating like a run on the bank.  The more the Court moves forward, the more people are going to have to feel that they have no choice but to show up and try to elbow their way in in order to be in equal position so that they're not hurt, and that eventually will lead to a much more difficult voluntary restructuring."); Tr. at 63 ("[T]he more the Court moves forward with cases against the Republic, the faster you will get new cases and other judges will get new cases because of the run on the bank problem, the mad scramble for assets problem.").

H.      The humanitarian crisis in Venezuela, which has been described (by the

Republic's own attorneys) as the worst on the planet other than in Syria.[12]

The Court recognizes that many (if not all) of these same considerations were recently

presented to the Third Circuit, which nonetheless decided just two months ago to lift the stay it

had imposed on this Court's proceedings.  (*See* Tr. at 43) (Crystallex: "[E]very argument that you

heard about the difficulties in Venezuela, about the sanctions, were all presented to the Third

Circuit . . . [i]n opposition to our motion to lift the identical stay . . . .  [Yet] the Third Circuit

lifted [its] stay.")  The Court of Appeals did not explain the reasoning for its stay decision.  Nor

did it, in this Court's view, dictate that this Court ***must*** now move forward, particularly when the

Supreme Court is going to have an opportunity to review the Third Circuit's merits opinion, if it

chooses to do so.

The Court also recognizes that, as the Third Circuit has pronounced, "Venezuela owes

Crystallex from a judgment that has been affirmed in our courts.  Any outcome where Crystallex

is not paid means that Venezuela has avoided its obligations."  *Crystallex* App. Op. at 149.

Today's decision is not intended to permit Venezuela to accomplish such a result.  Venezuela

recognizes that it must pay what it owes.  (*See, e.g.*, Tr. at 31) (counsel for Republic stressing

that Guaidó government intends to engage in voluntary restructuring of all its debts)  Instead,

---

[12]*See, e.g.,* Tr. at 30-31 (Republic: "[T]he Republic of Venezuela is facing a massive
humanitarian crisis.  Other than Syria, it is the worst crisis on the Planet Earth at this time.
People are going without food.  People are leaving the country.  People do not have enough
medicine.  They don't have electricity.  It is a very bad situation, and the Republic is without
significant resources to address that situation now."); *see also* 19-mc-290 D.I. 11 at 4 (Republic
citing report that "Venezuela's gross domestic product [GDP] has plummeted nearly 50%" over
past five years, which "is considered the biggest economic collapse in human history outside of
war or state collapse and is double the size of the GDP drop in the United States during the Great
Depression").

today's decision reflects the Court's attempt to carefully balance the many competing interests in a dynamic and internationally sensitive set of circumstances. Should Crystallex believe the Court's assessment is incorrect or an abuse of discretion, it can move to lift the stay – or seek to appeal this order.

The Republic has asked for a longer stay than the Court is granting. It seeks a stay "until somebody shows up with a license from OFAC saying that they're permitted to go forward." (Tr. at 29; *see also* D.I. 150 at 4 (arguing that cases should be stayed "until those parties [i.e., creditors] obtain a specific license from OFAC to proceed"))[13] Today's stay lasts ***only*** until the

---

[13]One of the multiple dynamic factors making the management of these cases all the more challenging is the (understandably) ongoing issuance of guidance from OFAC. Just this week, on December 9, 2019, OFAC responded to additional Frequently Asked Questions ("FAQ"), in a manner the Republic and PDVSA contend (correctly, in the Court's view) further supports the granting of at least some stay. (*See* D.I. 150) The new FAQs include the following:

> **808. Do I need a specific license from OFAC to file a suit in U.S. court against a person designated or blocked pursuant to Venezuela-related sanctions? Does a U.S. court, or its personnel, need a specific license from OFAC to hear such a case?**
>
> No. A specific license from OFAC is not ordinarily required to initiate or continue U.S. legal proceedings against a person designated or blocked pursuant to OFAC's Venezuela sanctions program, or for a U.S. court, or its personnel, to hear such a case. However, a specific license from OFAC is required for the entry into a settlement agreement or the enforcement of any lien, judgment, or other order through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect property or interests in property blocked pursuant to the Venezuela Sanctions Regulations (31 C.F.R. Part 591). . . .
>
> **809. I hold a writ of attachment on shares of a Government of Venezuela entity whose property and interests in property are blocked pursuant to the Venezuela Sanctions Regulations. Am I authorized to prepare for and hold an auction or other sale of**

completion of Supreme Court proceedings (subject to any further order of this or any other Court

lifting the stay).  The longer stay preferred by the Republic might be much longer indeed; it

might even last forever, if Crystallex's speculation is correct that OFAC will not issue a license

until a winning bidder has been identified (which cannot happen if this Court refuses to proceed

with a sale until after a license is obtained).[14]  A stay any longer than the one the Court is entering

_____

> **the shares, contingent upon the winning bidder obtaining a
> license from OFAC?**
>
> No.  Parties who have attached shares of an entity whose property
> and interests in property are blocked pursuant to the Venezuela
> Sanctions Regulations (31 C.F.R. Part 591) must obtain a specific
> license from OFAC prior to conducting an auction or other sale,
> including a contingent auction or other sale, or taking other
> concrete steps in furtherance of an auction or sale.  More generally,
> OFAC urges caution in proceeding with any step in furtherance of
> measures which might alter or affect blocked property or interests
> in blocked property.  OFAC would consider license applications
> seeking to authorize such activities on a case-by-case basis. . . .

(D.I. 150-1)

Crystallex responded on December 11, 2019 by reiterating its position that the steps it
proposes occur now – including requiring an answer to the writ and briefing how an eventual sale
will be conducted without actually conducting such a sale – are still consistent with the OFAC
guidance.  (*See* D.I. 153)  The Court recognizes that it has discretion to move forward in the
manner Crystallex requests.  However, for the reasons explained throughout this Order, the Court
believes the most reasonable and appropriate exercise of its discretion is to not proceed until after
litigation over the issues the Court has already resolved is concluded at the Supreme Court (one
way or another).  (*See also* 18-cv-1963 D.I. 38 (letter filed by creditor Saint-Gobain Performance
Plastics Europe in response to Republic and PDVSA's December 9 letter); 19-mc-290 D.I. 25
(letter filed by creditor OI European Group B.V. in response to same))

[14] *See* Tr. at 24; *see also id.* at 66-68 (Crystallex: "There's no question that the U.S.
Government knows what is going on here, but it's all somewhat hypothetical until we have a
buyer identified and they can say, is this a good buyer? . . .  OFAC is not going to be able to
make that decision until they know who the party is and then we will do it. . . .  [T]o ask them to
take a position at this point in time in the abstract is really just asking them to, asking them for
the purpose of causing additional delay here.").

today is not, at this time, warranted.

Given the Court's reasoning, it follows that now is not the appropriate time to require the Republic to answer the writ or for the Court to engage in the likely complicated and time-consuming effort to delineate the process for conducting a sale of the attached assets, both of which Crystallex requests be done expeditiously.  (*See* D.I. 139 at 4-6; *see also generally id.* at 15 (CITGO observing that "[a] sale of privately-held stock of the magnitude at issue in this case is unprecedented"))  Nor is now the appropriate time to litigate a motion to quash the writ or for reconsideration under Federal Rule of Civil Procedure 60(b), as the Republic and PDVSA suggest could also be done at this point.  (*See id.* at 14)  Instead, the legal issues presented by the Republic and PDVSA's appeal from this Court's August 2018 opinion should first receive their final determination with completion of the Supreme Court proceedings, however and whenever they end.

In the meantime, should Crystallex (or any other party, including any other creditor in the actions being stayed by this Order) believe it can persuade the Court that additional steps toward an eventual execution should be taken, it may so move.  In the absence of receiving and granting such a motion, this Court will await the conclusion of the Supreme Court process.

2.      Further in the *Crystallex Asset Proceeding*, (a) Rosneft Trading S.A.'s motion to

---

Another creditor, OI European Group B.V. ("OI"), has sought a license from OFAC and (as far as the record reveals) that request is still pending.  (*See, e.g.*, Tr. at 57-58)  OI, like Crystallex, insists "if the stay isn't vacated in this court, then they certainly aren't going to do anything at OFAC and we are going to be stuck here for a long time."  (*Id.* at 51)

As explained below, the Court is hopeful it will hear directly from some entity of the Executive Branch, perhaps including OFAC, so that it need not speculate whether OFAC will refrain from issuing a license until after the bidding process is completed.

intervene (D.I. 100) is **GRANTED**; (b) CITGO's motion to intervene (D.I. 101) is **GRANTED**;

(c) the Bondholders'[15] motion to intervene (D.I. 103) is **GRANTED**; and (d) PDVH's motion to

extend its obligation to file a verified answer (D.I. 109) is **GRANTED**.  After the stay is lifted,

the parties should advise the Court as to their positions as to when an answer should be required.

Federal Rule of Civil Procedure 24(a)(2) provides:

> On timely motion, the court must permit anyone to intervene who
> . . . claims an interest relating to the property or transaction that is
> the subject of the action, and is so situated that disposing of the
> action may as a practical matter impair or impede the movant's
> ability to protect its interest, unless existing parties adequately
> represent that interest.

The Third Circuit has articulated four elements that must be established to permit intervention

pursuant to Rule 24(a)(2): "(1) the application for intervention is timely; (2) the applicant has a

sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical

matter by the disposition of the action; and (4) the interest is not adequately represented by an

existing party in the litigation."  *United States v. Terr. of V.I.*, 748 F.3d 514, 519 (3d Cir. 2014).

"[T]he polestar for evaluating a claim for intervention is always whether the proposed

intervenor's interest is direct or remote."  *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d

Cir. 1998).  The Third Circuit's approach favors "pragmatism" and "elasticity" over "rigid rules"

or "narrow approach[es];" it further "favors intervention over subsequent collateral attacks."  *Id.*

at 970-71.

Each of the requirements is met by each of the proposed intervenors.  The applications for

---

[15]The "Bondholders" are BlackRock Financial Management, Inc. and its affiliates, on
behalf of certain client funds and accounts under management, and Contrarian Capital
Management, L.L.C., also on behalf of client funds and accounts that it manages, as holders of
bonds issued by PDVSA.  (*See* D.I. 103)

intervention were timely, as they were consistent with the timing set out in the Court's August 23, 2018 Order.  (D.I. 95 at 2)  Each of the creditors (Rosneft and the Bondholders) has a sufficient interest to protect (i.e., an interest in collecting money owed to them by the Republic) that may be affected or impaired by the disposition of this action (if Crystallex collects $1.2 billion from the sale of PDVH shares, those assets will not be available to satisfy debts owed to others), which is not adequately represented by the existing parties in this litigation.

CITGO's interest is based on the fact that CITGO and its parent, CITGO Holding, Inc., are parties to various agreements that are secured by assets that could be impacted by the outcome of the *Crystallex Asset Proceeding.*  Certain CITGO assets could be harmed by these proceedings (for reasons that are elaborated on in portions of CITGO's filings that are currently sealed).  (*See, e.g.*, D.I. 101 at 3-6)  CITGO's interest is not adequately represented by any existing party in the litigation.

In considering all the relevant facts and circumstances, and preferring pragmatism and elasticity over rigidity, the Court can identify no prejudice to Crystallex in granting the intervention motions.

3.      *Crystallex I* and *Crystallex II* will remain **STAYED** until completion of the Supreme Court proceedings in the *Crystallex Asset Proceeding* or further order of this or any other Court lifting the stay.  (*See* C.A. No. 15-1082 D.I. 115)  Only Rosneft opposes the continued stay, seeking instead dismissal, based on the purported futility of amendment of Crystallex's claim under the Delaware Uniform Fraudulent Transfer Act ("DUFTA"), 6 Del. C. § 1301 *et seq.*, given the Third Circuit's reversal of this Court's 2016 decision in *Crystallex I*, 213 F. Supp. 3d 683 (D. Del. 2016), *rev'd by Crystallex Int'l Corp. v. Petróleos de Venezuela,*

*S.A.*, 879 F.3d 79 (3d Cir. 2018).  The Court does not see any need to evaluate the futility of any proposed amendment at this time, particularly as *Crystallex I* and *Crystallex II* may become moot depending on what occurs in the *Crystallex Asset Proceeding*.  (*See, e.g.*, Tr. at 47) (Crystallex explaining that it hopes to satisfy its judgment in *Crystallex Asset Proceeding*, thereby mooting *Crystallex I* and *II*)

4.      *ConocoPhillips I* and *ConocoPhillips II* will remain **STAYED** until completion of the Supreme Court proceedings in the *Crystallex Asset Proceeding* or further order of this or any other Court lifting the stay.  (*See* C.A. 16-904 D.I. 67)  Only Rosneft opposes the continued stay, seeking dismissal instead, for the same reasons noted above in connection with *Crystallex I* and *Crystallex II*.  For the same reasons given above with respect to those cases, the Court also decides not to dismiss these *ConocoPhillips* cases.

5.      OI, another creditor of the Republic, seeks an order granting a writ of attachment like the one granted to Crystallex in the *Crystallex Asset Proceeding*.  (*See OI European Group, B.V. v. Bolivarian Republic of Venezuela*, 19-mc-290 D.I. 2)  OI's principal contention is that the Court has already found that PDVSA is the Republic's alter ego, so the Republic and PDVSA are barred by the doctrine of collateral estoppel from relitigating this issue.  (*See* 19-mc-290 D.I. 3 at 1, 8-14; *see also* Tr. at 51) ("[W]e're another secured creditor, precisely, or about to be, if the writ is granted, situated precisely as Crystallex was, except that we come second.  And so under basic principles of collateral estoppel, the same rules should apply.")  The Court disagrees.  *See generally Crystallex* Aug. 9 Op. at 425 ("[T]he collateral estoppel effect of any ruling from this Court will be a matter to be decided by whatever . . . court is confronted with these issues at a later time.").

13

A party asserting collateral estoppel must prove the following elements: "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment." *Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n*, 342 F.3d 242, 252 (3d Cir. 2003) (alterations in original).

The question of whether PDVSA can, under the present circumstances, be deemed an alter ego of the Republic is not identical to the issue decided in the *Crystallex Asset Proceeding*, and has not been actually litigated and decided on the merits. *See Scooper Dooper, Inc. v. Kraftco Corp.*, 494 F.2d 840, 846 (3d Cir. 1974) ("It is well settled that changed factual circumstances [when they are "material" or "controlling"] can operate to preclude the application of collateral estoppel."). As the Republic persuasively argues: "things are not at all the same" as they were when the Court made its findings in the *Crystallex Asset Proceeding*. (Tr. at 55) "The relevant portion of PDVSA, which is the property in the U.S., is under different control under a new legal regime . . ., recognized by the U.S." (*Id.* at 55-56) Thus, the Court agrees with the Republic that "[t]he alter-ego status today was not actually litigated and necessarily decided in [the Court's] decision in August of 2018." (Tr. at 57)

Nor is it clear that the pertinent date as to which the Court must decide whether PDVSA was or is the alter ego of Venezuela in connection with OI's action is the same August 2018 date the Court analyzed in the *Crystallex Asset Proceeding*.[16] Instead, the pertinent date on which an

---

[16] *See generally Crystallex* Aug. 9 Op. at 391 ("[T]he shares of PDVH . . . are, ***at this time***, really the property of Venezuela.") (emphasis added); *Crystallex* App. Op. at 150 (assessing "commercial use" element of FSIA attachment immunity analysis under "a totality-of-the-circumstances" standard "***at the moment*** the writ is executed") (emphasis added).

14

alter ego relationship must exist (or must have existed) may well differ in different cases involving different creditors.  The Court is not persuaded at this point that its finding of an alter ego relationship as of August 2018 is dispositive of whether such a relationship existed at any other time.

Moreover, the Third Circuit expressly noted in its *Crystallex* Appellate Opinion: "On remand, Venezuela may direct to the District Court credible arguments to expand the record with later events." *Crystallex* App. Op. at 144; *see also Crystallex* Aug. 9 Op. at 424-25 ("[T]he record which has persuaded this Court that PDVSA and Venezuela should be treated as alter egos of one another may not be the same record that is created in some other action.  Indeed, even in this case, the record may be supplemented in the next stage of the proceedings . . . which could potentially lead to different findings."); *id.* at 425 (identifying as "unsettled" whether "Venezuela, PDVSA, and/or any other entity [may] appear and seek to supplement the factual record already developed in this litigation and, if so, will such an entity attempt to (and if so, be permitted to) argue that additional evidence materially alters the Court's findings").  If even the *Crystallex Asset Proceeding* record may possibly be expanded, it must be that the Court has discretion in the non-Crystallex actions to consider a record other than (or in addition to) the record created in the *Crystallex Asset Proceeding*.

Yet another reason collateral estoppel will not be applied is that equitable principles disfavor its application in the circumstances presented here.  "Even when the requirements of the general rule of collateral estoppel are satisfied, the Court must consider whether there are special circumstances present which make it inequitable or inappropriate to foreclose relitigation of a previously determined issue." *Nat'l R.R. Passenger Corp.*, 288 F.3d at 528; *see also Parklane*

15

*Hosiery Co. v. Shore*, 439 U.S. 322, 330-31 (1979) ("[Where] the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel."); *Smith v. Borough of Dunsmore*, 516 Fed. App'x 194 (3d Cir. 2013) (recognizing courts "have broad discretion to determine when to apply non-mutual offensive collateral estoppel") (internal quotation marks omitted).  The same concerns that have persuaded the Court it is appropriate to stay these actions until conclusion of the Supreme Court proceedings likewise suggest that the equities do not favor the application of collateral estoppel that creditors, including OI, are seeking.

Since collateral estoppel does not apply, any creditor seeking to place itself in a situation similar to Crystallex will have to prove that PDVSA is and/or was the Republic's alter ego on whatever pertinent and applicable date.[17]  In attempting to meet this burden, any creditor may be able to find support (perhaps strong support) in the record created in the *Crystallex Asset Proceeding* and the finding reached (and affirmed)[18] there.  But that is a determination that will

---

[17]At least with respect to **execution** of a writ, the Third Circuit has explained that a "totality-of-the-circumstances inquiry" applies.  *Crystallex* App. Op. at 150.  "[N]arrowing the temporal inquiry to [just] the day the writ is executed [would] unnecessarily leave[] room for manipulation."  *Id.*; *see also id.* ("This analysis should include an examination of the uses of the property in the past as well as all facts related to its present use, with an eye toward determining whether the commercial use of the property, if any, is so exceptional that it is an out of character use for that particular property.") (internal citation and quotation marks omitted).  It may be that the "temporal inquiry" with respect to immunity from suit and issuance of the writ (i.e., "extensive-control" analysis) calls for a similar totality analysis.  The Court need not decide these issues at this point.

[18]The Third Circuit evidently found it easy to affirm this Court's finding.  *See, e.g.*, *Crystallex* App. Op. at 133 (noting that Venezuela did "not substantially contest the District Court's finding that it extensively controlled PDVSA"); *id.* at 144 (noting that outcome would have been the same even if clear and convincing evidence standard applied); *id.* at 146 ("PDVSA effectively conceded that Crystallex satisfied each factor under *Rubin* at oral argument"); *id.* at 152 ("[W]here a foreign sovereign exerts dominion over the instrumentality so extensive as to be

need to be made in each non-Crystallex case, at the appropriate time.

From all of the foregoing, it follows that a creditor like OI must prove, by a preponderance of the evidence, that PDVSA is the alter ego of Venezuela on and as of the pertinent date – just as Crystallex did in connection with its writ of attachment.[19]  OI has failed to present any evidence other than attempting to rely on the record created in the *Crystallex Asset Proceeding*.  As collateral estoppel does not apply, OI has failed to meet its burden of proof.  Accordingly, OI's motion for a writ of attachment (19-mc-290 D.I. 2) is **DENIED**.

Further, for the same reasons given above in connection with the *Crystallex Asset Proceeding*, 19-mc-290 is **STAYED** until completion of the Supreme Court proceedings in the *Crystallex Asset Proceeding* or further order of this or any other Court lifting the stay.

6.      For the same reasons given above in connection with the *Crystallex Asset Proceeding*, *OI European Group B.V. v. Bolivarian Republic of Venezuela*, 19-cv-290, is **STAYED** until completion of the Supreme Court proceedings in the *Crystallex Asset Proceeding* or further order of this or any other Court lifting the stay.  (*See also* Tr. at 60) (counsel for CITGO explaining this case is "basically tracking the *Conoco* civil cases and *Crystallex* civil

---

beyond normal supervisory control . . . equity requires that we ignore the formal separateness of the two entities.  This [case] clears that bar ***easily***.") (emphasis added); *see also id.* at 146 (noting that any "equitable basis" required to rebut presumption of separateness between Venezuela and PDVSA "is easily satisfied here").

[19]The Third Circuit noted Venezuela's argument that the "appropriate point of reference for the extensive-control analysis" is "the moment the writ is issued."  *Crystallex* App. Op. at 144.  For purposes of appellate review, the Third Circuit rejected the contention that it should analyze the extensive-control question as of a date different than the date this Court analyzed, as the Third Circuit's task was to review this Court's analysis.  *See id.*  While Venezuela "points to no authority for [its] proposition" that the only pertinent date is the date the writ is issued, *id.*, this Court does not (and need not at this point) decide which date is the pertinent date for undertaking an extensive-control analysis in any of the non-Crystallex cases.

cases")

7.      Saint-Gobain Performance Plastics Europe ("Saint-Gobain") is another creditor of the Republic. *See Saint-Gobain Performance Plastics Europe v. Bolivarian Republic of Venezuela*, 18-cv-1963.  Saint-Gobain has an International Centre for Settlement of Investment Disputes ("ICSID") award on which it seeks to collect.  On December 5, 2019, the Court heard oral argument on Saint-Gobain's motion for entry of default judgment and the Republic and PDVSA's cross-motion to vacate the Clerk's entry of default.

For the reasons stated below, (a) Saint-Gobain's motion for default judgment (D.I. 11) is **DENIED**; (b) the Republic's and PDVSA's motions to vacate the entry of default are **GRANTED**; (c) the Republic's motion to transfer is **GRANTED** and this action as against the Republic will be **TRANSFERRED** to the United States District Court for the District of Columbia, as the District of Delaware is not a proper venue; and (d) this action as against PDVSA is **DISMISSED**, as there has not been proper service.

Because the Court is granting the Republic and PDVSA's motion to vacate the Clerk's entry of default, for the reasons to be explained, it follows that the Court cannot grant Saint-Gobain's motion to enter a default judgment.  *See Church-El v. Bank of N.Y.*, 2013 WL 1190013, at *4 (D. Del. Mar. 21, 2013) ("The Third Circuit and multiple district courts within the Circuit have recognized that an entry of default or a default judgment can be set aside if it was not properly entered at the outset, including circumstances where proper service of the complaint is lacking.") (citing cases); Fed. R. Civ. Proc. 55 (explaining that entry of default judgment involves two-step process, beginning with Clerk's entry of default).  Further, there is "good cause" to set aside the default against the Republic because it will not prejudice Saint-Gobain

18

(which presumably will have an opportunity after the case is transferred to continue to attempt to collect on its ICSID judgment); the Republic has a meritorious defense to proceeding here (i.e., improper venue); and the default was not the result of the Republic's "culpable conduct" but rather due (at least as it appears from the record) to the change in government in the Republic, the crises that nation is experiencing, and a vast amount of pending litigation confronting Venezuela. *See* Fed. R. Civ. Pro. 55(c); *see also Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985).[20]

The Court is vacating the Clerk's entry of default as to the Republic and transferring this action as against the Republic because venue is not proper in the District of Delaware. Saint-Gobain's contention that Delaware is a proper venue turns on two propositions: that PDVSA is "doing business" in Delaware (through PDVH) and that PDVSA is Venezuela's alter ego. (*See, e.g.*, 18-cv-1963 D.I. 21 at 9-11 (citing 28 U.S.C. § 1391(f)(3); *see also id.* D.I. 1 at 3 ¶ 5 (Saint-Gobain alleging: "Venue in this District is proper under 28 U.S.C. § 1391(f)(3) because Defendant PDVSA is an instrumentality of Venezuela that does business in Delaware through PDVH.")) Neither of these propositions has been established in this case.

First, in the *Crystallex Asset Proceeding*, this Court found that PDVSA has "used" PDVH stock "for a commercial activity" within the meaning of 28 U.S.C. § 1610, a finding affirmed by the Third Circuit, *see Crystallex* App. Op. at 149-50. Contrary to Saint-Gobain's contention, however, that finding does not equate to a finding that Venezuela (through PDVSA) is "doing business" in Delaware, as that term is understood in the context of 28 U.S.C. § 1391(f)(3). (*See*

---

[20]The Court need not analyze whether there is "good cause" to set aside the default against PDVSA because the case against PDVSA is being dismissed.

18-cv-1963 D.I. 21 at 9-11)  Instead, the "used . . . for a commercial activity" finding was based

on the distinction between "a foreign government act[ing] . . . as a regulator of a market" and one

acting "in the manner of a private player within it," *Crystallex* App. Op. at 150;[21] *see also*

*Crystallex* Aug. 9 Op. at 418 (same), which is a different inquiry than whether the foreign

government is "doing business."  *See generally Vivadent (USA), Inc. v. Darby Dental Supply*

*Co.*, 655 F. Supp. 1359, 1362 (D.N.J. 1987) ("[An entity] will be held to be 'doing business' for

purposes of section 1391(c) if its activities within the district are such that its business has

become localized and is in operation within the district so that some state would probably require

the foreign corporation to be licensed as a condition precedent to doing that business.")

(emphasis omitted).   Not every "private player" act taken by a sovereign in the market

constitutes "doing business" or would require a license.

     Second, and for reasons already explained, Saint-Gobain (like OI) has not demonstrated

that PDVSA is or was the alter ego of Venezuela as of the pertinent date.

     The proper venue for this action as against the Republic is the United States District

Court for the District of Columbia ("D.C. Court").  *See* 28 U.S.C. § 1391(f)(1) (FSIA provision

requiring civil action against foreign state be brought in D.C. Court unless "a substantial part of

---

     [21]As the Third Circuit explained in the *Crystallex* Appellate Opinion:

    [T]he phrase commercial activity captures the distinction between state sovereign
    acts, on the one hand, and state commercial and private acts, on the other.  [W]hen
    a foreign government acts, not as a regulator of a market, but in the manner of a
    private player within it, the foreign sovereign's actions are commercial within the
    meaning of the [Sovereign Immunities Act].  Commercial actions include those
    that . . . are the type of actions by which a private party engages in trade and traffic
    or commerce.

*Crystallex* App. Op. at 150 (internal citations, quotation marks, and emphasis omitted).

the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated," in another District).  The Court will transfer (rather than dismiss) this action to the D.C. Court.

The case as against PDVSA is being dismissed because PDVSA has not been properly served.  The FSIA permits four methods by which a plaintiff may effect service on a defendant foreign sovereign, the second of which is "in accordance with an applicable international convention on service of judicial documents."  28 U.S.C. § 1608(a)(2).  Here, the applicable convention on service of judicial documents is the Hague Service Convention.[22]  The Hague Service Convention requires member-states to establish a Central Authority to receive and process requests for service of documents from other countries, and to effectuate such service. *See* Hague Service Convention art. 2.  Once service has been effectuated, the Central Authority is then required to complete a certificate detailing the circumstances of service or explaining why service was prevented, and return that certificate directly to the service applicant.  *See* Hague Service Convention art. 6.  Service is deemed to be "made" on the date of service set forth in the certificate of service provided by the Central Authority.  *See* 28 U.S.C. § 1608(c)(2).

Saint-Gobain couriered service papers to the Venezuelan Foreign Ministry, which Venezuela has designated as its Central Authority, but the Central Authority never returned a completed certificate of service to Saint-Gobain.  (18-cv-1963 D.I. 11 at 11-12)  The Hague Service Convention contemplates such a situation and does not permit a foreign sovereign to feign non-service by its own failure to complete and return the required certificate.  For example,

---

[22]*See* Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163.

21

the first paragraph of Article 15 of the Hague Service Convention provides that a default judgment may be entered where "the document was ***actually delivered to the defendant*** or to his residence by another method provided for by this Convention." Hague Service Convention art. 15 (emphasis added).[23] Pursuant to this first paragraph of Article 15, the Court finds (based on the undisputed evidence) that Saint-Gobain has served the Republic. By "actually deliver[ing] to the defendant," i.e., the Republic, by serving the appropriate documents directly to the Central Authority designated by the Republic of Venezuela, Saint-Gobain served the Republic, notwithstanding the Republic's failure to provide Saint-Gobain a certificate.[24]

The analysis is different for service on PDVSA. For the same reasons given above in connection with OI's motion, the Court finds that Saint-Gobain has failed at this point to meet its burden to prove that PDVSA is the alter ego of Venezuela as of the pertinent date in the *Saint-Gobain* action. Saint-Gobain has provided no evidence that PDVSA should be treated as the alter ego of the Republic other than pointing generally to the record and holding in the *Crystallex*

---

[23]In other words, the first paragraph, by setting out that "judgment shall not be given until it is established" that at least one of the disjunctive conditions of paragraph 1 is met, provides that judgment ***may*** be given once such a condition is established.

The Republic reads the first paragraph of Article 15 as delineating a necessary but not independently sufficient condition for service. (*See, e.g.*, 18-cv-1963 Dec. 5, 2019 Tr. at 26-35, 57; *see also id.* D.I. 18 at 14-17) The Republic further contends that the conditions set out in the second paragraph of Article 15 must be found satisfied in order to find that the Republic has been served, in the absence of a completed certificate of service. (*See id.* Dec. 5, 2019 Tr. at 27) The Court disagrees. The second paragraph does not limit applicability of the first paragraph. Instead, it provides another manner of perfecting service despite a sovereign's failure to complete a certificate, "notwithstanding the provisions of the first paragraph." Hague Service Convention art. 15.

[24]The Republic's argument that personal jurisdiction is lacking is rejected, as it relies on the premise of improper service, which the Court has rejected. (*See* 18-cv-1963 D.I. 18 at 10-11)

22

*Asset Proceeding.* As Saint-Gobain has itself admitted, unless PDVSA is viewed as the alter ego of Venezuela, there has been no service on PDVSA. Therefore, the case as against PDVSA must be dismissed. (Consequently, the Court will not address PDVSA's other arguments for dismissal.)

8.    Finally, the Court invites and would welcome any input that the Executive Branch of the United States Government would like to provide at any and all future stages of any of the above-captioned actions. If, as would be entirely acceptable to the Court, the Executive Branch wishes to provide input during the pendency of the stay of any of these actions, any party may provide a brief response to any such submission in a timely manner, notwithstanding the stay.

The Court will deliver a copy of this Order to the United States Attorney for the District of Delaware ("USAO") and requests that the USAO take reasonable efforts to ensure that copies of the Order are received by the pertinent offices within the United States Department of Justice. (*See* Tr. at 65, 70) (counsel for Republic suggesting this course of action)[25]

December 12, 2019                    HONORABLE LEONARD P. STARK
Wilmington, Delaware                 UNITED STATES DISTRICT JUDGE

---

[25]The Court does not mean to suggest that it will automatically or necessarily defer to whatever views and preferences the Executive Branch may express. (*See generally* D.I. 153) (contending that certain readings of OFAC FAQs "would raise potential separation of powers concerns") But the Court does feel its analysis of the issues it must decide will be better informed if it hears directly from the Executive Branch.

23