IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

OI EUROPEAN GROUP B.V.,

    Plaintiff,

v.

BOLIVARIAN REPUBLIC OF VENEZUELA, et al.,

    Defendants.

C.A. No. 19-cv-290-LPS

**OPPOSITION OF DEFENDANTS MUFG UNION BANK, N.A. AND GLAS AMERICAS LLC TO MOTION OF SULLIVAN & CROMWELL LLP AND ABRAMS & BAYLISS LLP TO WITHDRAW AS COUNSEL FOR DEFENDANT BOLIVARIAN REPUBLIC OF VENEZUELA**

Of Counsel:

PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
Walter Rieman
Jonathan Hurwitz
1285 Avenue of the Americas
New York, NY 10019
212-373-3000
wrieman@paulweiss.com
jhurwitz@paulweiss.com

Dated: May 19, 2023

PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
Daniel A. Mason (#5206)
500 Delaware Avenue, Suite 200
Post Office Box 32
Wilmington, DE 19899
302-655-4410
dmason@paulweiss.com

*Attorneys for Defendants MUFG Union Bank, N.A. and GLAS Americas LLC, in their respective capacities as Trustee and Collateral Agent, under the Indenture dated October 27, 2016, and the Pledge and Security Agreement dated October 28, 2016, governing PDVSA's senior secured notes due 2020*

## Table of Contents

                                                                                                                    **Page**

Preliminary Statement ............................................................................................................... 1

Argument ................................................................................................................................... 2

The Court Should Not Authorize Counsel for Venezuela to Withdraw Until Successor Counsel for Venezuela Have Appeared ...................................................................................... 2

       A.       Legal Standards .................................................................................................. 2

       B.       Litigation of the Action While Venezuela Is Unrepresented Would Be Prejudicial to the Trustee and the Collateral Agent and Would Harm the Administration of Justice ................................................................................... 4

       C.       Moving Counsel Have Not Carried Their Burden of Demonstrating That Denial of the Motion Would Prejudice Them ........................................................ 8

       D.       The Trustee and the Collateral Agent Are Reasonably Concerned That Venezuela's Apparent Willingness to Allow Itself to Become Unrepresented May Be Strategic ........................................................................ 11

       E.       Moving Counsel Have Not Established That Their Continued Participation in the Action Would Serve No Meaningful Purpose or That the Equities Warrant Granting Their Motion ......................................................................... 13

Conclusion ............................................................................................................................... 14

## Table of Authorities

Page(s)

**Cases**

*Bradford Energy Capital, LLC* v. *SWEPI LP*,
　No. 17-cv-1231, 2021 WL 2865429 (W.D. Penn. July 8, 2021) ................................................3

*Crystallex Int'l Corp.* v. *Bolivarian Repub. of Venez.*,
　No. 17-mc-151, 2021 WL 129803 (D. Del. Jan. 14, 2021) ................................................4, 12

*Crystallex Int'l Corp.* v. *Bolivarian Repub. of Venez.*,
　No. 17-mc-151, 2023 WL 2891452 (D. Del. Apr. 11, 2023) ..............................................4, 12

*In re DVI, Inc. Sec. Litig.*,
　No. 03-cv-5336, 2014 WL 5430998 (E.D. Penn. Oct. 24, 2014) ...........................................14

*Johnson* v. *Smithkline Beecham Corp.*,
　No. 11-cv-5782, 2017 WL 2729272 (E.D. Pa. Jan. 23, 2017), ................................................3

*Ohntrup* v. *Firearms Cntr., Inc.*,
　802 F.2d 676 (3d Cir. 1986) ........................................................................................3, 13, 14

*Ohntrup* v. *Makina Ve Kimya Endustrisi Kurumu*,
　760 F.3d 290 (3d Cir. 2014) .................................................................................................3, 14

*Petróleos de Venez., S.A.* v. *MUFG Union Bank, N.A.*,
　495 F. Supp. 3d 257 (S.D.N.Y. 2020), *judgment entered*, Judgment Pursuant
　to Fed. R. Civ. P. 54(b), No. 19-cv-10023 (S.D.N.Y. Dec. 1, 2020) (D.I. 229),
　*certifying questions of law to the New York Court of Appeals*, 51 F.4th 456
　(2d Cir. 2022), *accepting certified questions of law for review*, No. 107, 2022
　WL 17095558 (N.Y. Nov. 22, 2022). .......................................................................................7

*Petróleos de Venez., S.A.* v. *MUFG Union Bank, N.A.*, No. 19-cv-10023, 2020
　WL 7711522 (S.D.N.Y. Dec. 29, 2020). ...................................................................................7

*Rowland* v. *California Men's Colony, Unit II Men's Advisory Council*,
　506 U.S. 194 (1993) ..................................................................................................................4

*Sistem Mühendislik Insaat Sanayi Ve Ticaret, A.S.* v. *Kyrgyz Repub.*,
　No. 12-cv-4502, 2020 WL 7890222 (S.D.N.Y. Nov. 5, 2020) .................................................4

*Winter* v. *Richman*,
　No. 17-cv-1322-LPS, 2020 WL 6940760 (D. Del. Nov. 25, 2020) ..........................................2

**Other Authorities**

Delaware Rules of Professional Conduct Rule 1.6 ............................................................................9

Fed. R. Civ. P. 54(b) ...........................................................................................................................7

Local Civil Rule 83.6(d) ....................................................................................................................2

Local Civil Rule 83.7.................................................................................................................2, 3, 10

Model Rule of Professional Conduct 1.16 ........................................................................................2

Defendants MUFG Union Bank, N.A., as Trustee under the documents governing PDVSA's 2020 Notes (the "Trustee"), and GLAS Americas LLC, as Collateral Agent under those documents (the "Collateral Agent"), respectfully oppose the motion of Sullivan & Cromwell LLP and Abrams & Bayliss LLP (collectively, "Moving Counsel") to withdraw as counsel for defendant the Bolivarian Republic of Venezuela.

## Preliminary Statement

The motion of Moving Counsel appears to arise from yet another episode in Venezuela's noncooperation with the judicial process. That motion, if granted, would leave Venezuela without counsel in this action. Successor counsel have not yet appeared, and it is not clear from the motion papers whether or when successor counsel will *ever* appear. *See* Mot. 2 n.1 (D.I. 75). As discussed below, Moving Counsel are entitled to withdraw in these circumstances only if their continued participation in the action would serve no meaningful purpose. Moving Counsel do not and could not make that showing.

Nor do Moving Counsel make any serious effort to show that the district court should grant their motion as an exercise of discretion based on the facts of the case. So far as the Trustee and the Collateral Agent are aware, OIEG might seek to commence litigation of its claim against the Trustee and the Collateral Agent at any time. The Trustee and the Collateral Agent would be gravely prejudiced if they were forced to commence litigation of OIEG's claim, let alone litigate that claim to judgment, during a time when Venezuela is unrepresented, functionally absent from the action, and thus highly unlikely to provide discovery, to be available for communications with the Court or other parties, or to participate in the action in other respects. Litigation of that claim, and of the action as a whole, while Venezuela is unrepresented would also burden the Court, delay the litigation, and prejudice the administration of justice. And Moving Counsel fail to establish that denial of the motion would be prejudicial to them.

The motion should be denied.

## Argument

### The Court Should Not Authorize Counsel for Venezuela to Withdraw Until Successor Counsel for Venezuela Have Appeared

**A.      Legal Standards**

Local Civil Rule 83.7 of this Court prohibits a lawyer from withdrawing an appearance for a party without the Court's permission when, as here, withdrawal will leave the party without counsel of record. Moving Counsel suggest that they are entitled to withdraw because "withdrawal can be accomplished without material adverse effect on the interests of the client." Mot. 2 (citing *Winter* v. *Richman*, No. 17-cv-1322-LPS, 2020 WL 6940760, at *5 (D. Del. Nov. 25, 2020) (in turn quoting Model Rule of Professional Conduct 1.16(b))). *Winter* applied that standard, however, only after first noting that "neither Plaintiff [the client of withdrawing counsel] nor Defendants [the other litigants] object to [the lawyer's] request to withdraw." *Winter*, 2020 WL 6940760, at *5. Here, OIEG, the Trustee, and the Collateral Agent oppose Moving Counsel's motion.

Model Rule of Professional Conduct 1.16, which was the source of the standard applied in *Winter*, states in subsection (c) that "[a] lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation. When ordered to do so by a tribunal, a lawyer shall continue [a] representation notwithstanding good cause for terminating the representation." The Model Rules govern lawyers who are admitted to or practice before this Court, "[s]ubject to such modifications as may be required or permitted by federal statute, court rule, or decision." D. Del. LR 83.6(d).

The "applicable law" governing this motion within the meaning of Model Rule of Professional Conduct 1.16(c) includes Local Civil Rule 83.7 and the decisional law guiding a

district court's exercise of its authority and discretion under Local Civil Rule 83.7.  Under that decisional law, a lawyer is entitled to withdraw as counsel for a party over opposition if the lawyer carries the "heavy burden," *Johnson* v. *Smithkline Beecham Corp.*, No. 11-cv-5782, 2017 WL 2729272, at *3 (E.D. Pa. Jan. 23, 2017), *report and recommendation adopted*, 2017 WL 2720183 (E.D. Pa. June 23, 2017), of demonstrating that the lawyer's continuing appearance "serves no meaningful purpose, particularly insofar as an opposing interest is concerned," *Ohntrup* v. *Firearms Cntr., Inc.*, 802 F.2d 676, 680 (3d Cir. 1986).

        A district court also has discretion to grant a motion to withdraw based on a fact-based inquiry into the specific circumstances prompting the request.  "Rules regarding attorney withdrawal are necessarily general because of the context-laden nature of such determinations.  The interests to be considered will vary widely from case to case."  *Ohntrup* v. *Makina Ve Kimya Endustrisi Kurumu*, 760 F.3d 290, 295 (3d Cir. 2014).  Courts, however, have often considered "factors such as: (a) the reasons why withdrawal is sought; (b) the prejudice withdrawal may cause to other litigants; (c) the harm withdrawal might cause to the administration of justice; and (d) the degree to which withdrawal will delay the resolution of the case."  *Bradford Energy Capital, LLC* v. *SWEPI LP*, No. 17-cv-1231, 2021 WL 2865429, at *1 (W.D. Penn. July 8, 2021).

        Under these standards, as we now discuss, Moving Counsel's motion should be denied.

> **B.     Litigation of the Action While Venezuela Is Unrepresented Would Be Prejudicial to the Trustee and the Collateral Agent and Would Harm the Administration of Justice**

Venezuela may appear in this action only through counsel.[1]  If Moving Counsel's motion is granted, Venezuela may become unrepresented in the action, and functionally absent from the action, indefinitely and, for all the Trustee and the Collateral Agent know, permanently. During the meet-and-confer process, Moving Counsel rejected suggestions that they defer any motion to withdraw until successor counsel for Venezuela have appeared.  Moving Counsel's refusal to wait does not give the Trustee and the Collateral Agent confidence that successor counsel will appear any time soon.  Even Delaware counsel for Venezuela, who will evidently continue to act as Delaware counsel for Venezuela in the *Crystallex Asset Proceeding*,[2] and who do not claim that the undisclosed cause of the attempted withdrawal of Sullivan & Cromwell extends to them, *see* Mot. 2 (D.I. 75), are unwilling to wait until successor counsel have appeared and to assess at that time whether Delaware counsel can continue in their present role.

---

[1]  *See Sistem Mühendislik Insaat Sanayi Ve Ticaret, A.S.* v. *Kyrgyz Repub.*, No. 12-cv-4502, 2020 WL 7890222, at *3 (S.D.N.Y. Nov. 5, 2020) (holding that a foreign sovereign "may not litigate [a] case pro se"), *report and recommendation adopted*, No. 12-cv-4502, 2021 WL 39582 (S.D.N.Y. Jan. 5, 2021).  In *Rowland* v. *California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-02 (1993), the Supreme Court explained that artificial entities—in other words, all entities other than natural persons—may not appear in a federal court *pro se*.  As the Court wrote, "[i]t has been the law for the better part of two centuries that a corporation may appear in the federal courts only through licensed counsel.  As the courts have recognized, the rationale for that rule applies equally to all artificial entities." *Id*. at 201-02 (citations omitted).  For that reason, the Court found that in enacting the statute permitting "persons" to appear *in forma pauperis*, "Congress was thinking in terms of 'persons' who could petition courts themselves and appear *pro se*, that is, of natural persons only." *Id.* at 203.

[2]  *See* Mot. to Stay, *Crystallex Int'l Corp.* v. *Bolivarian Repub. of Venez.* ("*Crystallex Asset Proceeding*"), No. 17-mc-151 (D. Del. Apr. 4, 2023) (D.I. 540) (signed by Abrams & Bayliss as Delaware counsel for Venezuela); Entry of Appearance, *Crystallex Asset Proceeding*, No. 17-mc-151 (D. Del. May 22, 2020) (D.I. 173) (appearance of counsel at Abrams & Bayliss for Venezuela).

If Moving Counsel's motion were granted, the Trustee and the Collateral Agent could be forced to litigate this matter—and possibly even to litigate this matter to its conclusion—in the absence of counsel for Venezuela. The Court has stated that the action "should move forward" when PDVSA is served with the complaint. Oral Order (Feb. 9, 2021) (D.I. 48). So far as the Trustee and the Collateral Agent are aware, service could occur at any time. In a status report, OIEG has asked that even *before* service of the complaint on PDVSA, the Court order a prompt deadline for the filing of responsive pleadings by all defendants who have been served or appeared, including the Trustee and the Collateral Agent. Joint Oct. 4, 2022 Status Report 3 (position of OIEG) (D.I. 74). In the same status report, OIEG asked that the Court permit OIEG to begin serving discovery requests "regardless of the nature of the responsive pleadings filed." *Id*. The Trustee and the Collateral Agent opposed those requests, *id*. at 7-9 (position of the Trustee and the Collateral Agent); the Court has not acted on those requests; and OIEG has not attempted to reassert those requests by motion. In these circumstances, however, the Trustee and the Collateral Agent must assume that OIEG might commence litigation of its claim against them at any time.[3]

---

[3] As Moving Counsel note, PDVSA "has indicated, that if it is served, it 'will certainly move to dismiss OIEG's DUFTA complaint.'" Mot. 3. PDVSA is not a party to OIEG's claim against the Trustee and the Collateral Agent. *See* Compl. ¶¶ 163-167 (D.I. 1). In any event, the Trustee and the Collateral Agent cannot rely on assertions in status reports by other defendants about their expected future litigation decisions.

Moreover, OIEG's statement of position in the Joint Oct. 4, 2022 Status Report, which is quoted above in text, makes clear that OIEG would oppose any stay of discovery during the pendency of motions to dismiss (presumably including any motion to dismiss filed by the Trustee and the Collateral Agent). There is also no reason for the Trustee and the Collateral Agent to assume that by the time the Court decides all motions to dismiss, successor counsel for Venezuela will necessarily have appeared. PDVSA's potential future motion to dismiss, like any potential future motion to dismiss that may be brought by the Trustee and the Collateral Agent or any other defendant, has no bearing on the proper resolution of this motion.

It would be severely prejudicial to the Trustee and the Collateral Agent for Venezuela to become unrepresented in, and absent from, the action. For example, in the absence of counsel for Venezuela, it will be difficult or impossible for the Trustee and the Collateral Agent even to serve discovery requests, let alone to obtain the discovery needed.

Discovery from Venezuela will be imperative. Factual allegations that involve Venezuela, and as to which the Trustee and the Collateral Agent will need discovery from Venezuela, are central to OIEG's claim against the Trustee and the Collateral Agent. OIEG's core allegation in support of that claim is that PDVH conveyed a security interest in 50.1% of the shares of CITGO Holding to the Collateral Agent "as part of a scheme orchestrated by Venezuela, PDVSA and PDVH with actual intent to delay, hinder, or defraud creditors like OIEG." Compl. ¶ 131 (D.I. 1). In many other respects, OIEG's claim against the Trustee and the Collateral Agent depends crucially on allegations concerning (i) actions and intentions of Venezuela itself or (ii) actions taken and intentions formed by PDVSA and PDVH under the alleged ultimate domination and control of Venezuela. *See, e.g.*, *id.* ¶¶ 4, 5, 6, 10, 51-86, 119, 122, 125, 128, 131.

The Trustee and the Collateral Agent are financial institutions with contractually circumscribed and limited roles concerning the 2020 Notes. *See generally* the accompanying Declaration of Daniel A. Mason Exs. A §§ 801-802 (Indenture), B § 604 (Pledge and Security Agreement). The Trustee and the Collateral Agent lack personal knowledge of Venezuela's intentions respecting PDVH's pledge of security. They are thus in particular need of discovery from Venezuela, among others, for the defense of OIEG's claim against them.

Efforts by the Trustee and the Collateral Agent to obtain discovery from Venezuela are already likely to be complicated by the fact that Venezuela as a litigant in U.S.

courts is now apparently controlled by the 2015 National Assembly and the Venezuelan Asset Administration and Protection Commission.[4] The extent to which Venezuela will be able to provide discovery concerning the events placed at issue by OIEG's claim against the Trustee and the Collateral Agent is therefore unclear. Those potential complications, however, are all the more reason that Venezuela should not be permitted to create additional barriers to discovery by allowing itself to become—and potentially to remain—unrepresented.

OIEG's claim against the Trustee and the Collateral Agent, if successful, would have extraordinarily grave consequences for holders of the 2020 Notes. OIEG seeks, as relief on that claim, an order unwinding, canceling, and voiding the conveyance of the collateral. Compl. ¶ 167, prayer for relief ¶ (h) (D.I. 1). PDVSA has defaulted on its payment obligations respecting the 2020 Notes. Judge Failla in the Southern District of New York entered a money judgment for the Trustee in the amount of approximately $1.93 billion and declaratory relief allowing the Trustee and the Collateral Agent to foreclose on and sell the collateral. That judgment is now on appeal.[5] Judge Failla has stayed foreclosure pending the completion of appellate proceedings in the Second Circuit.[6] If OIEG obtains the relief it seeks, the Trustee may be unable to obtain payment of its money judgment.

---

[4] By filing this opposition, the Trustee and the Collateral Agent do not take or imply any position as to who, if anyone, is currently entitled to control representation of the Bolivarian Republic of Venezuela as a litigant in this Court.

[5] *Petróleos de Venez., S.A.* v. *MUFG Union Bank, N.A.*, 495 F. Supp. 3d 257 (S.D.N.Y. 2020) (granting motion of Trustee and Collateral Agent for summary judgment), *judgment entered*, Judgment Pursuant to Fed. R. Civ. P. 54(b), No. 19-cv-10023 (S.D.N.Y. Dec. 1, 2020) (D.I. 229), *certifying questions of law to the New York Court of Appeals*, 51 F.4th 456 (2d Cir. 2022), *accepting certified questions of law for review*, No. 107, 2022 WL 17095558 (N.Y. Nov. 22, 2022).

[6] *Petróleos de Venez., S.A.* v. *MUFG Union Bank, N.A.*, No. 19-cv-10023, 2020 WL 7711522 (S.D.N.Y. Dec. 29, 2020).

The Trustee and the Collateral Agent would be prejudiced by the absence of counsel for Venezuela, and the administration of justice would be harmed by that absence, in many other ways.  Motions for summary judgment or trial would be rendered more burdensome for the Court and more difficult and expensive for all represented parties, including the Trustee and the Collateral Agent.  Delay would be inevitable.  While there has been no determination as to potential cross-claims that may be appropriate in connection with the litigation, if the Trustee and the Collateral Agent were to determine that the assertion of cross-claims against Venezuela is appropriate, service of a pleading asserting such claims and litigation of those claims would become far more difficult.  Enforcement of this Court's orders and potential judgments respecting Venezuela would be significantly impeded.  Venezuela might question the extent to which it is subject to issue preclusion as a result of orders and judgments entered while it is unrepresented.  And it would be a particular affront to the administration of justice for these consequences to ensue in *this* action while Venezuela continues its vigorous litigation, through counsel, of related actions in this Court, related proceedings in the Third Circuit, and related requests for review by the United States Supreme Court.

    **C.**    **Moving Counsel Have Not Carried Their Burden of Demonstrating That Denial of the Motion Would Prejudice Them**

The motion states that Sullivan & Cromwell seeks to withdraw "because its engagement as counsel to the Interim Government and the National Assembly of the Bolivarian Republic of Venezuela, headed by President Juan Guaidó, has ended.  The specific reasons for the conclusion of that engagement are confidential under Delaware Rules of Professional Conduct Rule 1.6."  Mot. 2 (D.I. 75).

It is not clear whether Sullivan & Cromwell views its engagement as "ended" because Mr. Guaidó is no longer the interim president of Venezuela or because Sullivan &

Cromwell purports to have terminated its representation of Venezuela for some undisclosed independent and allegedly confidential reason. But neither contention would warrant viewing the representation as concluded for purposes of this motion, and Moving Counsel has not even attempted to establish prejudice if their motion is denied.

First, the fact that the Guaidó administration no longer exists is irrelevant. Moving Counsel appeared in this action as counsel for the Bolivarian Republic of Venezuela.[7] The 2015 National Assembly, which Sullivan & Cromwell apparently views as having engaged that firm as counsel to Venezuela, still exists. At the end of December 2023, the 2015 National Assembly enacted an amended transition statute that, among other provisions, created the Venezuelan Asset Administration and Protection Commission. *See* Mason Ex. C; *see also* Neuhaus Decl. ¶ 1 (referring to the Commission). The 2015 National Assembly, either directly or through a committee of its members, appoints the members of the Asset Administration and Protection Commission. *See* Mason Ex. C. Alleged changes in the identity of agents for Venezuela who are entitled to retain and direct counsel on behalf of Venezuela—particularly a change that seems to be only a delegation of authority from the 2015 National Assembly to a commission appointed by and answerable to the 2015 National Assembly—do not warrant viewing Sullivan & Cromwell's representation of Venezuela as "ended" for purposes of this motion.

---

[7] *See* Entry of Appearance (D.I. 39) (appearance of counsel at Abrams & Bayliss "on behalf of defendant Bolivarian Republic of Venezuela"); Entry of Appearance (D.I. 40) (appearance of counsel at Abrams & Bayliss "on behalf of defendant Bolivarian Republic of Venezuela"); Mot. for Admis. *Pro Hac Vice* (D.I. 42) (stating that counsel at Sullivan & Cromwell will "represent defendant Bolivarian Republic of Venezuela in this action"); Oral Order of June 3, 2020 (noting that Court had so-ordered motion "filed by Bolivarian Republic of Venezuela" for *pro hac vice* appearance of counsel at Sullivan & Cromwell).

9

Second, any suggestion that Sullivan & Cromwell has attempted to terminate its engagement by Venezuela is entitled to no weight on this motion. *See* Neuhaus Decl. ¶ 1. Under Local Civil Rule 83.7, Sullivan & Cromwell lacks the ability to terminate its representation of Venezuela without permission from the Court unless and until successor counsel for Venezuela appear in the action. The representation isn't over until this Court says it's over. Moreover, Sullivan & Cromwell has not even attempted to establish prejudice to itself if the motion is not granted; it says only that the "specific reasons" for its purported termination of its engagement are confidential. Mot. 2 (D.I. 75). Counsel wishing to withdraw in the absence of successor counsel, however, bear the burden of showing that the Court should grant permission for their withdrawal under Local Civil Rule 83.7.

Abrams & Bayliss seeks to withdraw only because Sullivan & Cromwell is also attempting to withdraw. Mot. 2 (D.I. 75). Abrams & Bayliss, however, is independently qualified to defend Venezuela against a claim arising under DUFTA.

According to the motion, Abrams & Bayliss seeks leave to withdraw primarily because "Abrams & Bayliss does not have a federal regulatory practice and lacks expertise in the OFAC licensing and sanctions matters at issue in this litigation. *See* Oct. 4, 2020 Joint Status Report, at 4 (D.I. 74)." Mot. 2 (D.I. 75). The only reference to OFAC on the page cited in the preceding quotation is the following sentence: "OIEG complains that the Second Circuit may soon issue a decision on the appeal of PDVSA and PDVH's challenge to the validity of the PDVSA 2020 notes and related pledge, but OFAC sanctions continue to block any sale of the CITGO Holding shares." Joint Oct. 2, 2022 Status Report 4 (D.I. 74) (position of PDV Holding, Inc., CITGO Holding, Inc., and CITGO Petroleum Corporation). That sentence refers to OFAC

sanctions only as a potential obstacle to a sale of the collateral securing the 2020 Notes pursuant to the judgment in the New York litigation.

The cited sentence thus does not remotely suggest, and it is not the case, that OFAC sanctions are "at issue" in *this* action in any sense that would prevent Abrams & Bayliss from independently representing Venezuela. And as many filings joined by Venezuela in the *Crystallex Asset Proceeding* demonstrate, when Venezuela as a litigant wants advice on OFAC issues, it is fully capable of procuring that advice.[8]

### D. The Trustee and the Collateral Agent Are Reasonably Concerned That Venezuela's Apparent Willingness to Allow Itself to Become Unrepresented May Be Strategic

The Trustee and the Collateral Agent have ample reason to be concerned that Venezuela might be willing to allow itself to remain unrepresented in this action for strategic reasons. It is arguably in Venezuela's interests for OIEG's claim against the Trustee and the Collateral Agent to succeed. That is so because if OIEG were to obtain an order unwinding PDVH's pledge of collateral to the Collateral Agent, ownership of the collateral, unencumbered by the pledge, would apparently revert to PDVH. The collateral might then be used for the potential benefit of creditors (including OIEG) of PDVH and its alleged alter egos. Use of an asset to pay the creditors of an entity confers an indirect benefit on the entity itself, because such a payment diminishes or extinguishes the entity's debts.

As this Court is well aware from this and related proceedings before it and in the Third Circuit, when Venezuela actually wants to litigate a claim or an action, it is entirely capable of pouring enormous legal resources into doing so. According to an article published by

---

[8] *See, e.g.*, Venez. Parties' Suppl. Opening Br. Regarding Sanctions Issues Raised by the Special Master's Proposed Order, *Crystallex Asset Proceeding*, No. 17-mc-151 (D. Del. Nov. 22, 2021) (D.I. 408); *see also* additional filings by the Venezuela Parties cited at *id.* at 1 n.2.

11

Bloomberg on May 4, 2023, the U.S. State Department recently granted the 2015 National Assembly control over Venezuela's bank accounts in the U.S., which, the article states, contain $347 million.  Mason Ex. D.  Venezuela is currently represented before this Court, the Third Circuit, and other courts by many lawyers and law firms, including a former Solicitor General of the United States.

Venezuela's conduct in related actions does nothing to dispel concern that its conduct here may be strategic.  This Court, for example, recently found that the Venezuela parties delayed asserting litigation positions for "strategic" reasons; their conduct, the Court found, had "at least a substantial element of being tactical and designed with at least a partial goal of further delaying these proceedings."  *Crystallex Asset Proceeding*, No. 17-mc-151, 2023 WL 2891452, at *4 (D. Del. Apr. 11, 2023).  The Court has also observed that Venezuela is a "highly-recalcitrant judgment debtor."  *Crystallex Asset Proceeding*, No. 17-mc-151, 2021 WL 129803, at *18 (D. Del. Jan. 14, 2021), *appeal dismissed*, 24 F.4th 242 (3d Cir. 2022).  And as the Special Master in the *Crystallex Asset Proceeding* has noted, the Venezuela parties have "file[d] motion after motion clearly intended to delay and frustrate the sale process."  Letter from R. Pincus to Hon. L.P. Stark, *Crystallex Asset Proceeding*, No. 17-mc-151 (D. Del. Feb. 28, 2023) (D.I. 530).

Venezuela's record of evasive tactics reinforces the concern of the Trustee and the Collateral Agent that if Moving Counsel's motion is granted, Venezuela might prolong the period during which it is unrepresented and might seek to exploit its unrepresented status to the prejudice of the Trustee and the Collateral Agent.

### E. Moving Counsel Have Not Established That Their Continued Participation in the Action Would Serve No Meaningful Purpose or That the Equities Warrant Granting Their Motion

For all of these reasons, Moving Counsel have not shown that their continuing appearance in the action "serves no meaningful purpose, particularly insofar as an opposing interest is concerned." *Ohntrup*, 802 F.2d at 680. Venezuela, on the one hand, and the Trustee and the Collateral Agent, on the other, are clearly "opposing interests" for purposes of the rule discussed in *Ohntrup*.

That is so for several reasons. First, for reasons already stated, Venezuela would arguably benefit if OIEG's claim against the Trustee and the Collateral Agent succeeded. *Supra*, Section D.

Second, if OIEG's factual allegations are correct, then Venezuela failed to disclose to the Trustee and the Collateral Agent the supposed fact that Venezuela caused the pledge of collateral as part of a scheme to defraud creditors. In other words, Venezuela, on OIEG's allegations, caused PDVH to conceal from the Trustee and the Collateral Agent the risk that the pledge of collateral might be unwound as a fraudulent conveyance.

Third, PDVSA, with the explicit support of Venezuela as amicus, is currently litigating an appeal in which it has challenged, on other grounds, the enforceability of the security interest protecting the 2020 Notes and the enforceability of the 2020 Notes themselves.[9]

In any event, although the rule discussed in *Ohntrup* requires "particular[ ]" consideration of the effect of withdrawal on "opposing interests," that rule also requires global consideration of the effect of the withdrawal on the administration of justice and on all parties.

---

[9] *See* Br. for the Bolivarian Repub. of Venez. as *Amicus Curiae* Supporting Appellants, *Petróleos de Venez., S.A.* v. *MUFG Union Bank, N.A.*, No. 20-3858 (2d Cir. Mar. 22, 2021) (D.I. 146).

13

802 F.2d at 680.  In light of the prejudice and harm that withdrawal would inflict, the continuing appearance of Moving Counsel manifestly serves useful purposes.

And for all of the reasons stated above, Moving Counsel have failed to establish that the facts justify granting permission to withdraw as an exercise of discretion.  *See Ohntrup*, 760 F.3d at 295; *see also In re DVI, Inc. Sec. Litig.*, No. 03-cv-5336, 2014 WL 5430998, at *2 (E.D. Penn. Oct. 24, 2014) (denying motion of counsel for defendant to withdraw based in part on prejudice to other defendants).

### Conclusion

Moving Counsel's motion should be denied.

Respectfully submitted,

Of Counsel:

PAUL, WEISS, RIFKIND,
    WHARTON & GARRISON LLP
Walter Rieman
Jonathan Hurwitz
1285 Avenue of the Americas
New York, NY 10019
212-373-3000
wrieman@paulweiss.com
jhurwitz@paulweiss.com

Dated: May 19, 2023

PAUL, WEISS, RIFKIND,
    WHARTON & GARRISON LLP

By:  */s/* Daniel A. Mason
        Daniel A. Mason (#5206)
500 Delaware Avenue, Suite 200
Post Office Box 32
Wilmington, DE 19899-0032
302-655-4410
dmason@paulweiss.com

*Attorneys for Defendants MUFG Union Bank, N.A. and GLAS Americas LLC, in their respective capacities as Trustee and Collateral Agent, under the Indenture dated October 27, 2016, and the Pledge and Security Agreement dated October 28, 2016, governing PDVSA's senior secured notes due 2020*

14